

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 18, 1951

Hon. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. V-1329.

Re: Authority of the Comptroller
to issue warrants in favor
of the revolving fund used
in connection with the Repair
and Warehouse Department of
the A. & M. College System.

Dear Sir:

You have requested an opinion of this office concerning the legality of a proposed method of operation of the Repair and Warehouse Department of the Agricultural and Mechanical College of Texas.

The specific fact situation here involved and the proposed operation may be summarized as follows:

There are five separate branches of the A. & M. College System located on the campus at College Station, each receiving a separate appropriation. The Board of Directors of A. & M. College has set up one central Repair and Warehouse Department in an effort to prevent a duplication of functions within its system, and as a means of securing more economical repairs and replacements. The Board established a revolving fund to be used to purchase repair materials, to pay for labor, and to pay the necessary overhead expenses. Each of the separate branches is billed for the actual cost of material and labor used on a repair job, plus 10% of the labor and 20% of the materials. The percentages are the pro rata part of the overhead allocated to each repair job, and are set at a point which keeps the Department functioning, but which yields no profit.

The revolving fund is placed in a local bank. Materials are purchased through the Board of

Control, but since purchased out of the revolving fund placed in a local bank, the Comptroller has no knowledge that the purchases are made through the Board of Control.

The proposed plan of operation is for the Repair and Warehouse Department to bill each of the separate A. & M. branches for the actual cost of material and labor used on a given repair job, plus 10% of the labor and 20% of the material as overhead. The responsible officer at A. & M. College would then attach a certificate stating that the material had been purchased through the Board of Control and billed at the proper price. The bill and certificate would then be forwarded to the Board of Control, and the Board, after satisfying itself that the material charge was correct and that the material had been purchased as required by statute, would certify the same to the Comptroller. The Comptroller would then issue a warrant in favor of the revolving fund, and charge it against the appropriation of the proper A. & M. branch.

Based on the above, you have asked the following questions:

(1)  Does the Comptroller have authority to issue warrants to reimburse the revolving fund of the Repair and Warehouse Department and charge these warrants against funds appropriated for the operation of the various parts of the A. & M. College System and from the funds appropriated to A. & M. College?

(2)  Is the proposed method of certification of the purchase of materials a proper one?

(3)  Is it proper for the Repair and Warehouse Department to charge 10% on labor and 20% on materials to defray overhead expenses?

There is no general statute setting up the mechanics for the operation of either warehouse or repair departments for the A. & M. College System.  In the General Provisions of the "Higher Education" section of the general appropriation bill, it is provided:

"The said Governing Board /of each educational institution/ is held strictly accountable to the Legislature for spending the appropriations herein made wisely,

economically, and for the best inter-
ests of the several institutions of
higher learning and the State."  Art.
V, Sec. 15, H.B. 426, Acts 52nd Leg.,
R.S. 1951, ch. 499, p. 1228, at p.
1468.

However, such a policy statement is not sufficient
to allow a warrant to be drawn in favor of a revolv-
ing fund and charged to an appropriation made for
labor and materials.  In deciding that the Comptrol-
ler could not draw a warrant against an appropria-
tion to A. & M. College to reimburse a revolving fund
used to pay laborers, this office held in Att'y Gen.
Op. 0-6942 (1945) that the warrant must be issued in
favor of the person performing the labor, because
the appropriation was made for that purpose.  It was
then stated:

"We note the statement in your let-
ter that the method suggested by you was
authorized by the Legislature in 1927.
We think, however, that the continuous
failure of the Legislature since that
time to enact similar provisions /revolv-
ing fund provisions/ in subsequent appro-
priations indicates that it did not want
the practice continued.  We think such
action, or rather inaction, on the part
of the Legislature is particularly sig-
nificant in view of the fact that for the
past several years, the departmental con-
struction on the part of the Comptroller
has been that payroll warrants must be
made payable to the employees."

Apparently the Legislature had the above
opinion in mind when it placed the following riders
in the general appropriation bill for the biennium
ending August 31, 1953:

"(e)  Appropriations to the Agricul-
tural and Mechanical College of Texas or
any other parts of the Texas Agricultural
and Mechanical College System, except
funds appropriated exclusively for sala-
ries, may be used to reimburse any revolv-
ing fund operated for the benefit of one

or more parts of said system, such as a motor pool, a feed supply center, an office supply or laboratory supply center, or any other operation of a similar nature established by authority of the Board of Directors of the Agricultural and Mechanical College of Texas." (Art. V, Sec. 4, H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228, at p. 1463.)

"Each institution affected by this Section is hereby authorized to set up a Revolving Fund to facilitate the payment of nominal expenses, to pay bills within cash discount periods, and to pay day and weekly payroll claims, etc. Disbursements from the revolving funds are to be reimbursed from the respective appropriations made herein, the State Comptroller being hereby authorized to make such reimbursements on claims filed with him by the institutions under his regularly prescribed procedures except that one (1) voucher and one (1) warrant may cover any number of claims for this purpose. These reimbursement claims shall meet the same requirements as other claims against State appropriations, and each institution shall prepare such a reimbursement claim as at the close of business on the last day of each month and as many times during each month as may be expedient in order to make unnecessary the maintaining of an unreasonably large revolving fund.

"The respective governing boards shall determine, subject to the approval of the Legislative Budget Board,[1] the amounts of the revolving funds to be set up for each institution, and may increase or decrease the amounts in the same manner if necessary. Such Board shall designate a depository bank for each revolving fund, and shall specify the officers and/or employees to sign checks drawn on each such

---

[1] This function of the Legislative Budget Board was declared unconstitutional in Att'y Gen. Op. V-1254 (1951).

fund. The revolving fund for each insti-
tution may be set up from State appro-
priations herein made for General Operat-
ing Expenses, or from local funds on hand
at August 31, 1951. The depository bank
for each revolving fund shall be required
to secure the deposit as provided by law."
(Art. V, Sec. 31, H.B. 426, Acts 52nd Leg.,
R.S. 1951, ch. 499, p. 1228, at p. 1472.)

The above provisions do not specifically
authorize a revolving fund for a Repair and Ware-
house Department, but the terms used are sufficiently
broad to allow this particular fund to be set up.
These riders clearly give authority to the Comptrol-
ler to issue a warrant in favor of the revolving fund
instead of the individual or firm that does the work
or furnishes the materials. The warrant may be charged
against State appropriations made from the General
Revenue Fund, except those made exclusively for sala-
ries, or against appropriations made from local funds
in the Treasury belonging to A. & M. College or be-
longing to any part of the A. & M. College System.
Thus, the riders make possible the use of a revolving
fund. Further, these riders merely detail the manner
of using the appropriation, are necessarily connected
with and incidental to the appropriation, and are
therefore valid. Att'y Gen. Op. V-1254 (1951). You
are therefore advised in answer to your first question
that the Comptroller has authority to issue warrants
from the proper funds in favor of the revolving fund.

Before issuing a warrant involving a pur-
chase of materials, the Comptroller must be satisfied
that the purchases have been properly made. The pro-
cedure proposed here, whereby the Board of Control cer-
tifies that the purchases have been properly made and
the Comptroller receives the certificate prior to is-
suing a warrant in favor of the revolving fund, is ade-
quate to assure the Comptroller that the purchasing
statutes are being complied with. Your second question,
therefore, is answered in the affirmative.

Your third question concerns the method of
charging the overhead expense among the various parts
of the A. & M. System receiving the advantages of the
Repair and Warehouse Department. In authorizing the
use of revolving funds for operations such as the one

in question, the Legislature certainly envisioned that each benefited member would pay its pro rata share of the necessary expenses incident to such an operation. The method of allocation is one to be left to the discretion of the proper administrative officials. There is no legal objection to the method proposed for the allocation of these expenses if it properly divides the expenses, and we have no reason to believe that it does not.

## SUMMARY

The riders in the general appropriation bill for the biennium ending August 31, 1953 (Art. V., Sec. 4, Par. (e), and Art. V., Sec. 31, H.B. 426, Acts 52nd Leg., R.S. 1951, ch. 499, p. 1228, at pp. 1463 and 1472), authorizing the use of revolving funds by the Texas Agricultural and Mechanical College System are sufficiently broad to allow the Board of Directors of the A. & M. College System to set up a Repair and Warehouse Department for the use of all units of the System. The Comptroller is authorized to issue warrants against the funds appropriated to the various parts of the System in favor of the revolving fund. The Comptroller must be satisfied that the purchasing statutes have been complied with prior to issuing a warrant, and the proposed method whereby the Board of Control certifies to the Comptroller that the purchases in question have been properly made is adequate to assure him of compliance with the statutes.

Yours very truly,

APPROVED:

C. K. Richards
Trial & Appellate Division

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant

EWT:wb

PRICE DANIEL
Attorney General

By E. Wayne Thode
    E. Wayne Thode
         Assistant